**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Dr. Athman Bouguettaya
210 E. Fairfax Street, #224
Falls Church, VA 22046,

Malika Bouguettaya
210 E. Fairfax Street, #224
Falls Church, VA 22046,

Mohamed I. Bouguettaya (child) by &
through his parents
Dr. Athman Bouguettaya & Malika
Bouguettaya
210 E. Fairfax Street, #224
Falls Church, VA 22046,

Plaintiffs,

VS.

Michael Chertoff, Secretary
Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528,

U.S. Department of Homeland Security
Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528,

Eduardo Aguirre, Jr., Director
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
425 Eye St. NW
Washington, DC 20536,

U.S. Citizenship and Immigration Services
425 Eye St. NW
Washington, DC 20536,

Phyllis A. Howard, District Director,
Services
Washington District Office
U.S. Citizenship and Immigration Services

WRIT FOR MANDAMUS,
DECLARATORY AND INJUNCTIVE
RELIEF

Civil Action: 06-
Judge:
Filed:

U.S. Department of Homeland Security
2675 Prosperity Avenue
Fairfax, VA 22031

Paul Novak, Director
Vermont Service Center
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
75 Lower Welden Street
St. Albans, VT-05479-0001,

Robert S. Mueller, III, Director
Federal Bureau of Investigation
Office of the General Counsel
Room 7427
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535-0001,

Alberto R. Gonzales
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001,

United States of America
US Attorney
555 Fourth Street, NW
Washington, DC 20001

Defendants.

## COMPLAINT FOR MANDAMUS, DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs present the instant Complaint before this honorable court requesting relief against Defendants for their actions and for their failure to act in accordance with law.

### I. INTRODUCTION

1. This is a complaint for relief pursuant to law including the U.S. Constitution, Mandamus Act (28 U.S.C. § 1361 (2005)), Declaratory Judgment Act (28 U.S.C.

§ 2201 (2005)), and the Administrative Procedure Act (5 U.S.C. § 551 et seq. (2005)). This action challenges the unreasonable delays in processing the Plaintiffs' Employment-Based Adjustment of Status (AOS) Application pending before the Vermont Service Center and Washington District Office of the United States Citizenship and Immigration Services (USCIS). This action further challenges the USCIS policy of requiring repeated applications for issuance of Employment Authorization and Advance Parole and for repeated fingerprints during the pendency of the AOS Application.

2. The process of obtaining employment-based U.S. Lawful Permanent Residence ("green card") has become egregiously whimsical and inconsistent over the past few years.

3. The Defendants have administered immigration laws by ad-hoc memoranda and unwritten policy rather than by regulation. The lack of appropriate regulations and the atmosphere of uncertainty are illegal and have directly thwarted the will of Congress, as articulated in various ameliorative statutes.

4. Defendants' action and inaction have directly and proximately injured and continue to directly and proximately injure the plaintiff.

5. A more detailed, but not exhaustive, enumeration of the harm suffered by the Plaintiffs is submitted under the caption "INJURY TO PLAINTIFFS."

## II. JURISDICTION

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (2005) (federal question jurisdiction) because Plaintiffs' claims arise under the Constitution and the laws of the United States, including the Fifth Amendment to

the U.S. Constitution, various provisions of Title 8 U.S.C. § 1101 et seq. (2005), (Immigration & Nationality Act, "INA") and applicable regulations, policies and procedures arising thereunder. This Court may grant relief in this action, *inter alia*, under 28 U.S.C. § 1361 (2005) (Mandamus Act); 28 U.S.C. § 1651 (2005) (All Writs Act); 28 U.S.C. § 2201 (2005) (Declaratory Judgment Act); and under 5 U.S.C. § 551 et seq. (2005) (Administrative Procedure Act).

7. There are no administrative remedies available to Plaintiffs to redress the grievances described herein. This action challenges only the Defendants' timeliness in adjudications, procedural policies and related practices, not the granting or denial of the AOS application. Therefore, the jurisdictional limitations of 8 U.S.C. § 1252 (2005) are not applicable.

### III. VENUE

8. Pursuant to 28 U.S.C. § 1391(e) (2005), venue is proper in this judicial district because the Defendant operates within this district and maintains headquarters in Washington D.C., and because a substantial part of the events or omissions giving rise to the claims herein occurred in Washington D.C.

### IV. PARTIES

**Plaintiffs**

9. Plaintiffs are citizens of Australia. Plaintiff, Athman Bouguettaya, is a Professor of Computer Science at the Northern Virginia campus of Virginia Tech located at 7054 Haycock Road, Falls Church, Virginia 22043. Plaintiff, Malika Bouguettaya is his wife and holds derivative immigration status as Professor Bouguettaya's spouse. Plaintiff, Mohamed I. Bouguettaya (born on May 21,

1996), with the legal status of a child, is represented by his parents Athman and Malika, in the instant complaint.

10. Plaintiffs' AOS application is pending as of the date of this Complaint before the Vermont Service Center and the Washington District Office of the USCIS since December 17, 2001. The plaintiffs appear before this honorable court on their own behalf as individuals.

### Defendants

11. Michael Chertoff is the Secretary of the Department of Homeland Security (DHS). Pursuant, *inter alia*, to 8 U.S.C. § 1103 (2005), Secretary Chertoff is charged with, among other matters, administering the USCIS and implementing and enforcing the Immigration and Nationality Act. As such, he has ultimate decision-making authority over the matters alleged in this Complaint.

12. Alberto R. Gonzales is the Attorney General of the United States. Pursuant, *inter alia*, to 8 U.S.C § 1103 (2005), he is charged with controlling determination of some issues of law pertaining to immigration and with representing the United States of America in various legal matters.

13. Eduardo Aguirre, Jr., is the Director of USCIS of the DHS. In his capacity as the Director of USCIS, Mr. Aguirre is responsible for the administration of immigration benefits and services including the processing of citizenship applications, and family and employment-based petitions. As such, he has decision-making authority over the matters alleged in this Complaint.

14. Paul Novak is the Director of the Vermont Service Center of USCIS of the DHS. In his capacity as the Director of the Vermont Service Center, Mr. Novak is

responsible for the administration of immigration benefits and services including the processing of citizenship applications and family and employment-based petitions. As such, he has decision-making authority over some of the matters alleged in this complaint.

15. Phyllis A. Howard is the District Director, Services, at the Washington District Office of USCIS. In her capacity as District Director, Services, Ms. Howard is responsible for the administration of immigration benefits and services including the processing of citizenship applications and family and employment-based petitions. As such, she has decision-making authority over some of the matters alleged in this Complaint.

16. Robert S. Mueller is the Director of the Federal Bureau of Investigation (FBI). In his capacity as the Director of the FBI, Mr. Mueller is responsible for the administration of services including the processing of security and name checks as requested by USCIS. As such, he has decision-making authority over some of the matters alleged in this Complaint.

## V. FACTS

17. A petition for an immigrant visa (Form I-140) was filed with the Vermont Service Center of USCIS, (having Receipt Number: EAC-01-198-55240) on May 16, 2001, under the first preference category comprising "outstanding professor or researcher."[1]

18. Vermont Service Center approved the immigrant petition filed on behalf of the Plaintiff Dr. Bouguettaya on October 11, 2001.

---

[1] 8 U.S.C. 1153(b)(1)(B) (2005).

19. Plaintiffs validly filed AOS applications on December 17, 2001 (having Receipt Numbers: EAC 02-080-50130, EAC 02-080-50105 and EAC 02-080-50162), which are currently pending before the Washington District Office of the USCIS. As of the date of filing of the instant Complaint, Plaintiffs' AOS application have been pending for over four years.

20. Plaintiffs are eligible to receive an immigrant visa and are admissible to the United States for permanent residence.

21. Immigrant visas were immediately available to the Plaintiffs at the time their AOS applications were filed (i.e., on December 17, 2001).

22. Under 8 U.S.C. § 1571 (2005), Congress clearly expressed the opinion that a reasonable time for AOS adjudications is approximately six months.

23. Pursuant to 8 U.S.C. § 1571 (2005), Defendants have exceeded the bounds of reasonableness in the time for adjudications.

24. During the pendency of the AOS applications, it is the Defendants' policy to require repeat Employment Authorization Documents as well as fingerprinting.

25. On or about August 26, 2003, Plaintiffs' AOS applications were transferred to the Washington District Office of USCIS. Beginning on or about August 26, 2003 the administration of their cases has been the responsibility of the Washington District Office of the USCIS, located at 2675 Prosperity Avenue, Fairfax, Virginia-22031.

26. Since December 17, 2001, Plaintiff Dr. Bouguettaya has been constrained to apply for and obtain Employment Authorization five times. Application dates

have been December 17, 2001, October 22, 2002, September 8, 2003, October 20, 2004, and on September 16, 2005.

27. The application for Employment Authorization filed by Plaintiff Dr. Bouguettaya on September 16, 2005 is still pending with the USCIS.

28. Since December 17, 2001, Plaintiffs have been constrained to request and obtain advance parole four times, on December 17, 2001, October 22, 2002, November 13, 2003, and November 23, 2004.

29. In addition, since December 17, 2001, Plaintiffs have been required to apply for fingerprinting on several occasions including one made on May 4, 2002, January 5, 2003, October 27, 2004, November 30, 2004, May 26, 2005, September 30, 2005, October 19, 2005, and November 1, 2005.

30. Plaintiffs have made numerous inquiries regarding the status of their case: including inquiries made on or about June 28, 2004, October 25, 2004, December 3, 2004, on or about January 14, 2005, again on February 2, 2005, March 4, 2005, April 20, 2005, August 29, 2005, and most recently on or about January 31, 2006. Some of these inquiries have been made in person at the USCIS-Washington District Office, but to no avail.

31. On or about January 14, 2005, Plaintiffs went to the Washington District Office, to obtain an interim Employment Authorization Document and inquire about an approved Advance Parole document that had not been received by Plaintiffs. During that visit, Malika Bouguettaya was separated from her husband, and taken to a small interrogation room. CIS Officers interrogated Plaintiff Malika about her immigration documents and her national background, using intimidating and

harassing interrogation techniques (e.g. refusing to allow her to use restroom facilities, profane verbal abuse including accusations of being "illegal" and ultimately threatening to arrest Plaintiff Malika).

32. On September 30, 2005, Plaintiffs appeared for their permanent resident interview at the Washington District Office with Officer Logan. During the interview, Officer Logan told the Plaintiffs that there were some additional documents necessary to complete the process.

33. On September 30, 2005, the Washington District Office issued a Request for Evidence requesting that they furnish passport-style photographs, affidavits of support for Plaintiffs Malika and Mohamed Bouguettaya, and copies of their expired passports.

34. On or about October 6, 2005 the Washington District Office received these documents from the Plaintiffs via U.S. mail. On October 30, 2005, the Plaintiffs returned to the District Office to hand-deliver these documents as well. On October 30, 2005, Officer Logan told the Plaintiffs that they would be receiving final notification "within two to three weeks."

35. Plaintiffs have made inquiries with the Office of U.S. Senator George Allen in February and March of 2005; and have also solicited the assistance of U.S. Representative Jim Moran, in April 2005 without receiving any resolution of the matter.

36. During their final inquiry at the USCIS-Washington District Office on or about January 31, 2006, USCIS District Supervisor Mrs. Dibbins told Plaintiffs that both of their cases were still pending F.B.I. background checks. This new case

status information is completely contradictory to the Service's earlier statements and to the Request for Evidence issued by USCIS Washington District officer Logan all indicating that Plaintiffs' cases were pending only certain documentary support (passport photographs, affidavits of support and copies of expired passports).

37. Subsequent to their final inquiry at the Washington District Office, the Plaintiffs sent a letter of complaint-dated February 6, 2006 to the Director of the Washington District Office. As with many of their previous letters including letters dated June 28, 2004, October 25, 2004, February 2, 2005 and April 20, 2005 it remains unanswered.

## VI. RELEVANT LAW AND PROCEDURES

### Employment-Based Categories

38. Under INA, the employment-based category is divided into five preferences or groupings. 8 U.S.C. § 1153(b) (2005).

39. The highest priority, first employment-based "priority workers," consists of:

   a) Aliens with extraordinary ability;

   b) Outstanding professors and researchers; and

   c) Certain multinational executives and managers subject to international transfer to the United States.

40. The second employment-based preference consists of professionals holding advanced degrees or their equivalent or who, because of their exceptional ability in the sciences, arts, or business, will substantially benefit the national economy, cultural or educational interests, or welfare of the United States.

41. The third employment-based preference comprises certain professional, skilled and unskilled workers where qualified workers are not available in the United States.

42. The fourth employment-based preference consists of certain special immigrants, including ministers of religion.

43. The fifth employment-based category includes alien investors who create or maintain at least ten jobs in the U.S., none of which can be for their own family members.

### Timeliness Requirements and Consequences

44. Section 202 of the Immigration Services and Infrastructure Improvements Act of 2000, 8 U.S.C. § 1571 (2005), clearly lays down the parameters of reasonableness in immigration adjudications, stating: "It is the sense of Congress that the processing of an immigration benefit application should be completed *not later than 180 days* after the initial filing of the application . . . ." 8 U.S.C. §1571 (2005) (emphasis added).

45. Section 204 of the Immigration Services and Infrastructure Improvements Act of 2000, 8 U.S.C § 1573 (2005), mandates that the "Attorney General shall take such measures as may be necessary to . . . reduce the backlog in the processing of immigration benefit applications, with the objective of the total elimination of the backlog 1 year after November 25, 2002 (as amended)." The Section also mandates that future backlogs must be prevented and infrastructure improvements must be made for effective provision of immigration services.

46. The Immigration Services & Infrastructure Improvements Act of 2000 (AC21) was enacted on 17 October 2000, more than five years ago. The Defendants have

even failed to promulgate regulations that would at least permit orderly administration of laws and procedures.

47. Defendants are also required by 5 U.S.C. § 555(b) (2005) "to conclude a matter" within "a reasonable time".

48. Most applicants for AOS are in the United States on nonimmigrant status such as H, L, O, etc. 8 U.S.C. § 1101 (a)(15)(2005). After going through appropriate procedures, individuals may apply to "adjust" their status to that of lawful permanent resident (LPR). 8 U.S.C. § 1255 (2005).

49. LPR's (also referred to as green card holders) enjoy many advantages over nonimmigrant status holders. As the name implies, LPR's have the privilege of residing and working permanently in the United States. 8 U.S.C. § 1101(a)(20) (2005). They may travel outside the United States freely and generally are readmitted to the United States automatically. 8 U.S.C. § 1101(a)(13)(C) (2005). They may petition to immigrate close family members. 8 U.S.C. §§ 1151, 1153 (2005); 8 C.F.R. § 204 (2005).

50. LPR's may retain their LPR status for the rest of their lives or, after five years of LPR status, they may apply to naturalize, that is, to become a United States citizen. 8 U.S.C. § 1427(a) (2005). Citizenship conveys many benefits over LPR status. Citizens may vote. They may apply for and receive a United States passport. They cannot be deported from the United States. They may travel freely into and out of the United States. They may petition for immigration of family members as "immediate relatives," thus eliminating many long waiting

periods. 8 U.S.C. § 1151(b)(2)(A)(i) (2005). They may hold many jobs that are restricted to United States citizens. They may run for public office.

51. LPR status is a prerequisite for naturalization. Thus, any delay in adjusting to LPR status also delays eventual naturalization.

### Employment Authorization

52. It is unlawful for an employer to hire an alien who is not authorized to work in the United States. 8 U.S.C. § 1324a (2005). AOS applicants are authorized to work in the United States upon approval of their Employment Authorization Document ("EAD"). 8 C.F.R. § 274a.12(c)(9) (2005).

53. Defendants limit the duration of AOS applicants' EAD to one year.

### Repeated Fingerprints

54. The Defendants require AOS applicants to be fingerprinted before their adjustment applications are granted. AOS applicants who are 14 years old or older must pay a fingerprint-processing fee and must appear at a USCIS Application Support Center (ASC) to be fingerprinted.

55. After 15 months, the Defendants consider the fingerprints to have expired. The Defendants have obligated the Plaintiffs to be fingerprinted again during the pendency of their AOS Application at additional expense and inconvenience, even though, of course, his fingerprints have not changed.

### VII. INJURY TO PLAINTIFFS

56. Because Plaintiffs have waited and will continue to wait significantly longer to become LPR's, they are unable to stabilize their life. Their status in the United States of America has been and will continue to be uncertain. Plaintiffs have been and will continue to be afraid to accumulate assets in the United States because

they fear that they may ultimately lose permanent residence status and be required to depart. They are unable to plan their future appropriately because they do not know when they will become permanent residents. In addition, Plaintiff Dr. Bouguettaya has not been able to attend and speak at the international scientific conferences of which he has been an invitee.

57. Plaintiff Dr. Bouguettaya has suffered and will continue to suffer considerable setbacks in his career because of delayed adjudication, including the loss of several career advancement opportunities.

58. Plaintiff Dr. Bouguettaya has lost significant work time and will continue to lose significant work time while pursuing his adjustment application, making inquiries at USCIS offices, meeting with lawyers, applying for employment authorization and travel documents each year and otherwise pursuing their delayed permanent residency.

59. Since the August 26, 2003 transfer to Washington District Office, Plaintiff Dr. Bouguettaya have not been able to travel back to Algeria to visit ailing parents.

60. The process of obtaining a green card can take several years. Two years or more of this can be attributed to AOS.

61. Because of Defendant's policies and practices as described herein, Plaintiffs have had to wait and will continue to have to wait many years to adjust their status. Plaintiffs have had to and will continue to have to submit to repeated fingerprinting at considerable cost and inconvenience. Since December 17, 2001, Plaintiff have gone for fingerprinting on numerous occasions including on May 4,

2002, January 5, 2003, October 27, 2004, November 30, 2004, May 26, 2005, September 30, 2005, October 19, 2005, and November 1, 2005.

62. On all these occasions, Plaintiff Dr. Bouguettaya had to take considerable time off from his work.

63. Because Defendants have unreasonably delayed Plaintiffs' AOS Application, Plaintiffs' naturalization has also been delayed. Career setbacks are but one of a long list of harms suffered by Plaintiffs. To list just a few, Plaintiffs have been and will continue to be unable to become eligible to vote and to participate fully in our democracy.

64. Because Defendants have implemented arbitrary and illegal procedures, Plaintiff Dr. Bouguettaya has had to and will continue to have to obtain EAD's and to pay for repeated renewals of those EAD's, resulting in significant out-of-pocket expenses and inconvenience. Since December 17, 2001, Plaintiff Dr. Bouguettaya has been constrained to apply for and obtain employment authorization five times, on December 17, 2001, October 22, 2002, on September 8, 2003, on October 20, 2004, and on September 16, 2005.

65. Because Defendants have implemented arbitrary and illegal procedures, Plaintiffs have had to and will continue to have to submit to repeated fingerprinting, resulting in significant out-of-pocket expenses and inconvenience. If the Plaintiffs fail to appear for fingerprinting, there is a substantial risk that USCIS will consider their AOS applications to have been abandoned.

66. Plaintiffs have reason to believe that some part of the delay is attributable to investigations pending before the Federal Bureau of Investigation.

67. Plaintiffs' rights to due process of law under the Fifth Amendment to the U.S. Constitution has been and is being violated and will continue to be violated by Defendants' policies and practices as described herein.

68. Because of Defendants' intimidating and harassing interrogation and detention of Plaintiff Malika Bouguettaya, she has suffered serious emotional disturbance and injury.

### VIII. GROUNDS FOR RELIEF

69. Defendants, despite having a duty to act within a reasonable time, have failed to process and adjudicate Plaintiffs' applications within a reasonable time.

70. Defendant USCIS has a legal duty to process and adjudicate Plaintiffs' application within a reasonable time. This duty is a non-discretionary duty mandated by federal law and judicial precedent.

71. In failing to process Plaintiffs' application and adjudicate their case within a reasonable time, USCIS has directly and proximately caused unnecessary and injurious delays to Plaintiffs, in violation of their rights.

72. Plaintiffs have exhausted all administrative remedies available and have determined that no adequate remedy exists.

73. Defendants' policies and procedures requiring repeated EAD applications and fingerprints are arbitrary and illegal.

### Count I
### Mandamus Action
### 28 U.S.C. § 1361

74. Plaintiffs' incorporate by reference all submissions made hereinabove that are pertinent to this Count.

75. Defendants are charged with the mandatory responsibility of administering and implementing the Immigration and Nationality Act.

76. Defendants bear sole responsibility for adjudication of AOS Applications within a reasonable time and for orderly attendant procedures.

77. Defendants have failed to discharge their mandated duties.

78. As a result, Plaintiffs' have suffered and continues to suffer irreparable harm and damages entitling them to declaratory, injunctive and other relief.

79. Plaintiffs' have exhausted all possible administrative remedies.

80. There exists no other adequate remedy.

81. Strong humanitarian factors favor the grant of Mandamus relief.

### Count II.
### Fifth Amendment

82. Plaintiffs' incorporate by reference all submissions made hereinabove that are pertinent to this Count.

83. Defendants' policies, practices and customs violate Plaintiffs' Fifth Amendment substantive and procedural due process rights protected by the U.S. Constitution.

84. As a result, Plaintiffs' have suffered and continue to suffer irreparable harm and damages entitling them to declaratory, injunctive and other relief.

### Count III.
### Violation of INA
### 8 U.S.C. § 1101 et seq.

85. Plaintiffs incorporate by reference all submissions made hereinabove that are pertinent to this Count.

86. Defendants' policies, practices and customs violate the INA as well as the Immigration Services and Infrastructure Improvements Act of 2000 §§ 202, 204, 8 U.S.C §§ 1571, 1573 (2005).

87. Defendants have failed to discharge their mandated duties.

88. As a result, Plaintiffs have suffered and continue to suffer irreparable harm and damages entitling them to declaratory, injunctive and other relief.

### Count IV.
### Administrative Procedures Act
### 5 U.S.C. § 555 and 5 U.S.C. § 701 et seq.

89. Plaintiffs incorporate by reference all submissions made hereinabove that are pertinent to this Count.

90. By failing to render a timely decision and by requiring repeated applications, Defendants' practices and procedures violate the Administrative Procedure Act and constitute agency action that is arbitrary, capricious, and not in accordance with law. 5 U.S.C. §§ 555, 701 et seq. (2005); *See also* 5 U.S.C. § 706(1) (2005) ("[A]gency action unlawfully withheld or unreasonably delayed").

91. Defendants have failed to discharge their mandated official duties.

92. As a result, Plaintiffs have suffered and continue to suffer irreparable harm and damages entitling him to declaratory, injunctive and other relief.

### Count V.
### Declaratory Judgment Act
### 28 U.S.C. § 2201

93. Plaintiffs incorporate by reference all submissions made hereinabove that are pertinent to this Count.

94. Defendants' actions and decisions relating to delays in AOS adjudications and attendant procedures are unconstitutional, violate the INA, and are arbitrary and capricious. Plaintiffs seek a declaration to that effect under 28 U.S.C. § 2201 (2005).

95. Defendants have failed to discharge their mandated duties.

96. As a direct and proximate result, Plaintiffs have suffered and continue to suffer irreparable harm and damages entitling them to declaratory, injunctive and other relief.

### Count VI.
### Equal Access to Justice Act
### 5 U.S.C. § 504 and 28 U.S.C. §2412

97. Plaintiffs incorporate by reference all submissions made hereinabove that are pertinent to this Count.

98. If they prevail, Plaintiffs will seek attorney fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 (2005) and 28 U.S.C. §2412 (2005).

### IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that the honorable Court grant the following relief:

i. Assume jurisdiction over this cause;

ii. Declare that the Defendants' actions are an illegal, arbitrary and capricious abuse of discretion;

iii. Declare that Defendants' failure to act is an illegal, arbitrary and capricious abuse of discretion;

iv. Enter Judgment ordering the Defendants to adjudicate Plaintiffs' pending Employment-Based Adjustment of Status Applications;

v. Award Plaintiffs attorney fees, costs and expenses under the Equal Access to Justice Act; and

vi.  Grant such other and further relief, as this honorable Court deems just and appropriate.

Dated: 15 March 2006

Respectfully submitted,

_____
RAJIV S. KHANNA,
Attorney for Plaintiff's
D.C. Bar No. 419023

Law Offices of Rajiv S. Khanna, P.C.
5225 N. Wilson Boulevard
Arlington, Virginia 22205
Phone: 703-908-4800, Extension 110
Facsimile: 703-908-4890
e-mail: rskhanna@immigration.com